## No. 183.

A. GOODWILL ET AL. VS. POLICE JURY OF BOSSIER PARISH ET AL.

The police juries of the several parishes have no power to interfere with or obstruct navigation on any navigable watercourse, by the construction of bridges without draw across the same or by the erection of embankments therein.

A watercourse will be held to be a navigable stream when in its natural state it is such as to afford a channel for useful commerce.

That condition is not affected by the formation thereon of natural barriers resulting from sand bars or rafts formed by the accumulation of timber.

APPEAL from the Second District Court, Parish of Bossier. *Drew*, J.

---

*Land & Land* for Plaintiffs and Appellants:

1.  Police juries may be prohibited by a writ of injunction from obstructing any stream susceptible of navigation. Ingram vs. Police Jury, 20 Ann. 226.

2.  Police juries have no power to construct public levees. The law gives them simply the management and control of completed public levees. Acts 88 of 1880; 104 of 1882; 84 of 1884.

3.  Their power over non-navigable streams is limited to cases where it is necessary to fill up the same for the purpose of carrying the public highways over such streams; provided no injury be thereby occasioned to the neighboring inhabitants. R. S. of 1870, sec. 2743–13.

4.  When the closing of a non-navigable stream by a police jury would destroy or greatly impair the navigation of a neighboring stream, and thereby inflict injury on the public, such closure is not authorized by the above statute. Police juries cannot do indirectly what they are prohibited from doing directly.

5.  The right of the State to close or obstruct streams is confined to such as are of no value to the public for purposes of navigation. Boykin & Long vs. W. A. Shafer, 13 Ann. 129

6.  "Mack's Bayou," which defendants have been injoined from closing, was by Act 175 of

1867, declared to be susceptible of navigation for purposes of trade and commerce and the levying of the same was forbidden by Act 63 of 1876, because it was an essential feeder of Lake Bisteneau, an important navigable stream.

7. The evidence shows that, as a matter of fact, "Mack's Bayou" is susceptible of navigation by small steamboats, flats and other craft. The true test of the navigability of a stream does not depend on the mode by which commerce is carried on nor the difficulties attending navigation. 20 Wallace, 430.

*Snider & Smith* and *J. A. Lowry* for Defendants and Appellees :

1. Act No. 63 of 1876 is a nullity in this, it has no title. Art. 114, Const. 1868 ; art. 29 of Const. of 1879.

2. If Act No. 63 of 1876 be a nullity then, under general powers of police juries, the police jury of Bossier parish had the power to authorize the construction of a dirt bridge across Mack's Bayou, if it be not navigable. R. S. of 1870, sec. 2743, Nos. 2 and 13 ; Act No. 87 of 1882 ; sec. 1 of Act 84 of 1884 ; Act 175 of 1867.

3. An action will not lie for damages resulting from a lawful act, it is *damnum absque injuria*. Donovan vs. City of New Orleans, 11 Ann. 711 ; Reynolds vs. Shreveport, 13 Ann. 426 ; New Orleans vs. Wandemere, 12 Ann. 84 ; Orr vs. Home Ins. Co., 12 Ann. 255 ; Bass vs. State, 34 Ann. 494 ; Charles River Bridge vs. Warren Bridge, 7 Pick, 344, and 11 Peters ; U. S. Reports, 420 ; Cooley on Const. Lim.; 481, 676.

The opinion of the Court was delivered by

POCHÉ, J.   This suit involves the power of the police jury of Bossier parish to close Mack's bayou, which is a stream flowing from Red river and emptying through several other bayous into lake Bistineau in said parish.

Plaintiffs in injunction are residents of Minden, a town in Webster, an adjoining parish, situated a short distance from the head water navigation of Dorcheat bayou, which empties into lake Bistineau at its northeastern extremity.

Alleging that Mack's bayou is a navigable stream, and that it is, in addition, one of the principal sources of water for, or feeders of, Lake Bistineau, which affords to this section of country the only navigable highway to Red river, and through it to the great markets of the country and of the world, they claim the legal right to prevent the closing of the same.

They are appellants from a judgment, based on the verdict of a jury, dissolving their injunction and dismissing their action.

The defence is a denial that Mack's bayou is a navigable stream within the legal meaning of the term, and the consequent legal authority in the police jury to exercise absolute control over it for the purposes of public highways, by means of bridges constructed over it or of embankments erected in it.

The pivotal question in this case, therefore, consists in ascertaining whether the bayou is or not a navigable stream. All the sources of

legal authority in the police jury to control that stream, as urged by defendants, are expressly conditioned on the fact that the stream be not susceptible of navigation for the purposes of commerce.

Section 2743 of the Revised Statutes of 1870, par. 13, empowers police juries to " cause any water course *which is not navigable* (italics are ours) to be filled up for the purpose of carrying the public highways over the same; provided that no injury be thereby occasioned to the neighboring inhabitants."

The proviso of Act 87 of 1882 confers the power to certain corporations with the consent of police juries where navigation terminates, and of police juries of adjoining parishes interested, to bridge without a draw such waters within ten miles of the terminus of high water navigation on watercourses which cannot be navigated except at high water.

Section 1 of Act 84 of 1884 has exclusive reference to the control of police juries over completed levees erected under the general power of the State, in keeping with the levee system which prevails therein, and over public roads within the limits of their respective parishes.

It appears that no provision in any of these enactments can be construed as conferring the power on police juries to interfere with, or obstruct in any manner, navigation on any navigable watercourse in this State, and much less to close, as proposed in this case, any such stream.

And we may add that the attempt of the State to delegate such power to police juries, or to any other State functionary or authority, would be defeated on proper showing by the courts, as violative of the letter and spirit of the Act of Congress by which Louisiana was admitted into the Union. Stat. at large, vol. 2, pp. 642 and 706.

Our reports are somewhat meagre of information on this important subject. We find but two cases which have some bearing on this question.

In the case of Boykin and Lang, 13 Ann. 129, this Court found that while bayou Black, in the parish of Terrebonne, was a navigable stream by nature, its use for commerce had been at first impeded by the accumulation of timber within its banks, and that by the subsequent removal of those impediments, the stream has lost its utility for navigation by the too rapid discharge of its waters. Hence the court sanctioned as a legal means to enhance the navigation of the bayou the construction of locks by an individual, and maintained his consequent right to charge and collect tolls in compensation therefor. The court rested its conclusions very guardedly on the fact well shown that the

Goodwill et al. vs. Police Jury et al.

proposed works would not impede, but would positively improve navigation on that stream.

In the case of Ingram vs. Police Jury of St. Tammany, 20 Ann. 226, the court enjoined the defendant from erecting a bridge across the Bogue Falia river, because the construction of the bridge would impede navigation on a navigable stream. The injunction was granted at the instance of a private individual, who showed that he was interested in the navigation of the watercourse.

It must be noted that in either of these cases the police jury did not attempt to close the watercourses.

From these and other authorities, which we have consulted, we reach the conclusion that the navigability of a watercourse depends upon the fact whether the river, in its natural state, is such as that it affords a channel for useful commerce, although its free navigation may be at times encompassed with difficulties by reason of natural barriers such as rapids and sandbars or accumulation of timber forming rafts.

The Supreme Court of the United States held that a small stream whose navigability was materially embarrased by rocks and rapids, and could only be navigated by means of Durham boats, and by means of locks and other artificial apparatus, was a navigable stream within the legal meaning of the term. The case of the Montello, 20 Wallace 430, and authorities therein cited.

The preponderance of the evidence in this record, although it is conflicting, affords satisfactory proof that Mack's bayou is by its nature a navigable stream, and that it has been frequently and for many years navigated by small steamboats and flatboats in the transportation of cotton, merchandise and other commodities.

Under the plainest rules of evidence the negative testimony of defendant's witnesses who say that the bayou is not navigable, and that in their recollection it has never been navigated for the purposes of commerce, must yield before the positive testimony of witnesses of unimpeached veracity, who state, as captains and pilots of steamboats, that they have navigated the stream, giving the names, dimensions and capacities of the vessels used in the trade, and the years in which they thus used the watercourse for the purposes of commerce. They also give the dimensions of the stream at the point where it flows out of Red river, at which place it is 120 feet in width and it has 20 feet in depth during the highest water tide; and it is at that point that the proposed embankment is to be thrown.

From the record we find that the country surrounding the town of

Minden have two water highways to Red River, both by the Dorcheat River and Lake Bisteneau, one of the routes through that lake and through Loggy bayou into the Red, the other also through the Dorcheat and that lake thence in a northwestern direction through Swan Lake, Red Chute Lake, Cross bayou and Mack's bayou, into the Red at a point considerably above the latter, and not remote from the city of Shreveport.

Through Mack's bayou as an outlet, Red river pours a large volume of water through the streams above-mentioned, thus feeding Lake Bistineau, and thus enhancing its navigation, which would be materially affected and much reduced in facilities by the closing of Mack's bayou.

We thus perceive the great utility which was naturally expected from that bayou in that double system of navigation, and we hold that it does not lie within the power of a police jury to alter or defeat the object to be accomplished.

The navigability of the bayou is not affected by its present condition, which is the result of the accumulation of timber which has floated and stopped against numerous bridges which had been built across the bayou, with or without legal authority, it is immaterial, and have formed rafts which at the present time seriously obstruct navigation thereon, and to some extent impede the free flow of waters through its banks.

It is therefore ordered that the judgment of the lower court be annulled, avoided and reversed; that the verdict of the jury be set aside, and it is now ordered that plaintiffs do have and recover judgment perpetuating the injunction to prohibit the police jury of Bossier parish from closing Mack's bayou in said parish by means of the embankment proposed to be thrown therein, at or near the point where it flows out of Red river, and for costs in both courts.